**[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 4.]**

DAYTON BAR ASSOCIATION *v*. TRUMAN.

[Cite as *Dayton Bar Assn. v. Truman*, 1995-Ohio-137.]

*Attorneys at law—Misconduct—One-year suspension with six months period of sanction suspended on condition that no disciplinary complaints against attorney are certified to Board of Commissioners on Grievances and Discipline during the one-year period—Writing unauthorized checks from client's business account.*

(No. 95-1194—Submitted July 26, 1995—Decided October 25, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-72.

_____

{¶ 1} By a complaint filed on October 17, 1994, relator, Dayton Bar Association, charged respondent, Vance Paul Truman of Beaumont, Texas, Attorney Registration No. 0061526, with professional misconduct involving, *inter alia*, DR 1-102(A)(3) (illegal conduct involving moral turpitude), 1-102(A)(4) conduct involving fraud, deceit, dishonesty, or misrepresentation), and 1-102(A)(6) (conduct that adversely reflects on fitness to practice law). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on March 3, 1995.

{¶ 2} The parties admitted the facts underlying the charged misconduct and stipulated to respondent's having violated the cited Disciplinary Rules. The record before the panel established that, in December 1990 and prior to respondent's November 1993 admission to the Ohio Bar, Sheilds Bar-B-Que, a Dayton restaurant, engaged respondent as an accounting consultant for its business. The owners of Sheilds Bar-B-Que, the Sheildses, had been in business for twenty-four years, but needed help organizing the financial aspects of their restaurant operation.

Respondent, who has an undergraduate degree in accounting and a Master of Business Administration, reviewed various financial records and suggested several accounting systems and procedures, most of which the Shieldses refused to follow consistently. Beginning in January 1992, respondent noticed that the Shieldses were failing to make bank deposits and to otherwise account for revenue generated by their restaurant. By July 1992, the Sheildses had completely abandoned record keeping, causing respondent to take complete control of the restaurant's financial books.

{¶ 3} Beginning in July 1992 and continuing through February 1994, including the period after his bar admission, respondent wrote himself checks for at least $16,865 in addition to the compensation he and the Sheildses had agreed upon for his services. Respondent admitted that, while he believed he devoted time and effort to Sheilds Bar-B-Que beyond what his level of compensation required, he was not entitled to the additional funds he paid himself. Respondent also had no explanation for his conduct—he was otherwise employed and not in financial trouble during the period in question. Moreover, respondent denies having had substance abuse or gambling problems.

{¶ 4} In February 1994, the Internal Revenue Service seized the Sheildses' assets to recover approximately $50,000 in delinquent taxes. Respondent realized that his conduct would likely be discovered as a result, and, after consulting counsel in March 1994, he disclosed his unauthorized payments to relator.

{¶ 5} At the time of the panel hearing, respondent had made restitution to the Sheildses in the amount of $17,865, paying an additional $1,000 to account for a discrepancy between his records of checks written to himself and losses assessed by the Montgomery County Prosecuting Attorney's Office. Respondent had also already completed a diversion program sponsored by the Montgomery County Prosecutor's Office, and he therefore does not expect to be the subject of a criminal prosecution. On his own initiative, respondent stopped practicing law in July 1994.

**{¶ 6}** Based on the foregoing, the panel determined that respondent had violated DR 1-102(A)(3), (4), and (6). In recommending a sanction for this misconduct, the panel considered the testimony of four character witnesses, each of whom attested to respondent's integrity apart from the events at issue and that his misconduct represented a dramatic departure from his lifestyle and values. The panel also considered that (1) respondent's misconduct did not occur in an attorney-client relationship, (2) he had made full restitution, (3) he cooperated completely with relator's investigation, and (4) he expressed genuine remorse for his misconduct.

**{¶ 7}** The panel recommended that respondent be suspended from the practice of law in Ohio for a period of one year, but that six months of this sanction be suspended, apparently on the condition that he commit no further misconduct within that year. The board adopted the panel's report, including its findings of fact, conclusions of law, and recommendation.

––––––––––––––––––

*Mark R. Chilson*, for relator.
*David C. Greer*, for respondent.

––––––––––––––––––

**Per Curiam.**

**{¶ 8}** Upon review of the record, we concur in the board's findings of misconduct and its recommendation. Respondent is therefore suspended from the practice of law in Ohio for one year, but six months of the sanction period are suspended on the condition that no disciplinary complaints against respondent are certified to the board by a probable cause panel during the one-year period. Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., dissents.

_____

**COOK, J.., dissenting.**

{¶ 9} I respectfully dissent. Respondent embezzled over $16,000, and only admitted the conduct upon concluding that he would probably be caught through the IRS proceedings. Giving consideration to the mitigating factors recited in the majority decision, I nevertheless believe that anything less than a full one-year suspension would be an inadequate censure.

_____